## Crow *versus* Green, et al.

1. One partner cannot maintain an action on the case against his co-partners for damages, to which he himself would be liable to contribute, for breach of contract by the partnership; nor can he maintain any other action against his co-partners for a partnership transaction, the partnership accounts being unsettled, except a bill in equity, or an action of account render.

2. Ozeas v. Foulke, 1 Binn., 191; Hall v. Logan, 10 Casey, 331; McFadden v. Hunt, 5 W. & S., 468; Leidy v. Messinger, 21 P. F. S., 177 followed.

February 2d, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Fayette county :* Of July Term, 1885, No. 182.

Case brought by Alexander Crow against Wilson Green and forty-one others, partners under the name and style of the Gallatin Furnace and Mining Company, to recover damages sustained by him by reason of said company failing to carry out a written contract with him, the plaintiff, to purchase from him certain real estate.

The following facts appeared on the trial of the case : In the year 1876, Judge Alexander Crow was the owner of one hundred and seventy-eight acres of land in Nicholson township, Fayette county, Pennsylvania, which was partly underlaid with valuable coal veins and with iron ore. In August, 1876, the defendants below and in error associated themselves together for the purpose of buying the Judge's farm and establishing a blast furnace on it. Their intention was to include Judge Crow in their association, buy his farm at a certain figure, procure a charter of incorporation, issue stock and perhaps bonds, and pay the Judge for his farm, in part at least, with stock or bonds. The plan was executed to the extent of making Judge Crow an associate with them, securing his subscription to $5,000 of the stock, and making, executing and delivering to him a written agreement to buy his farm for $23,000. This article of agreement is not under seal. It is dated August 31st, 1876. It is signed by Alexander Crow of the first part and A. W. Boyd as President of the Gallatin Mining and Furnace Company of the second part. It is not disputed that Mr. Boyd in signing this article acted for the defendants in error, and that they afterwards acted for a time under its provisions. At the time of the execution of this article of agreement Judge Crow was largely in debt. Judgments to the amount of from fifteen to eighteen thousand

[*Crow v. Green.*]

dollars stood upon the dockets of Fayette county against him, and some of them were pressing him very hard. It was supposed by the parties to the article of agreement that Judge Crow's debts would not exceed but would certainly come considerably under $18,000. It was therefore provided in the article that the parties of the second part should immediately proceed to pay and satisfy the liens against Judge Crow, that they would pay him the difference between the sum requisite to clear the dockets and $18,000 in cash, and then deliver him $5,000 in stock of the company.

The dower of two widows was included in the liens contemplated by this article, and it was expressly provided that the parties purchasing the land were to assume and pay all interest upon all liens and charges upon it accruing after August 31st, 1876, the date when it was executed. This interest so accruing after August 31, 1876, was not to be deducted from the $23,000, but was to be provided for by the purchasers as their own debt. If Judge Crow's record debts should turn out to be in excess of $18,000, then the Judge was to receive no cash from the defendants below and in error, but was to accept stock of the company at par for the difference between the amount required to pay his debts and $23,000. The par value of each share of stock was $100.

The purchasers were to receive full possession of the premises on the 1st of April, 1877, and were to be allowed to enter immediately for the purpose of beginning operations for mining and building the furnace, and also for the purposes of the fall seeding.

As soon as the article of agreement was signed the parties thereto of the second part, who are the defendants below and in error, entered upon the Judge's farm in pursuance of their rights under the article, surveyed it, located their blast furnace, assumed control of the fall farming operations, and in short, carried into actual execution all the provisions of the article relating to their rights in the premises. Steps were taken also to procure letters patent, but the incorporation of the company never was completed.

Mr. Michael W. Franks was the treasurer of this prospective corporation. He is one of the defendants below and in error, and in pursuance of his duties as one of the purchasers of the Crow farm, he repaired to Uniontown with money to carry out the requirements of the article concerning the Judge's debts.

It appears that the parties of the second part had decided to avail themselves of the clause in the article of agreement contemplating the postponement by them of the payment of the record liens, upon their immediate assumption as their

[Crow v. Green.]

own proper debt of all interest demandable after August 31st, 1876. Frank therefore had instructions to pay *interest* on the judgments. He consulted a lawyer who advised him not to pay it. He did not pay anything on the judgments or liens, nor did any of the defendants below and in error, ever do so.

Judge Crow's creditors had understood during the latter part of the summer of 1876 that he was perfecting arrangements to pay his debts, and they relaxed their compulsion upon him. As time passed, however, and nothing was done towards the liquidation of their claims, they renewed their process, and on the 5th of September, 1877, his farm of 178 acres for which the defendants below and in error had agreed to pay him $23,000, was sold by the sheriff for $8,500.

The plaintiff having closed his case, the defendants moved the court for a compulsory nonsuit.

Answer of the Court: "May 12, 1885. In the case on trial it seems that the plaintiff as well as the defendants were partners in the same company, and it is very well settled that one partner cannot sue his co-partner in an action of this kind, and we think the motion for a nonsuit ought to be sustained. We have therefore made an order directing judgment of nonsuit to be entered against the plaintiff with leave to the plaintiff to move to take off such judgment at next term."

The plaintiff moved to take off the judgment of nonsuit. The court overruled the motion, and allowed the judgment to stand.

The plaintiff thereupon took this writ assigning for error the refusal of the court to take off the judgment of nonsuit.

*E. Campbell* and *R. P. Kennedy*, for plaintiff in error.

Mr. Lindley, in his work on Partnership, *728, says: "Passing now to the subject of actions between persons who are partners in the full and proper sense of the word (this citation certainly concedes to the defendants in error as much as they can claim), it is proposed to inquire under what circumstances an action by one against the other will lie, and under what it will not. With reference to this inquiry it will be found useful to keep constantly in mind these questions, viz.: First, is any matter of account involved in the dispute to which the action relates? Secondly, will the damages sought to be obtained, belong if obtained, to the firm? Thirdly, will such damages have to be paid out of a fund to which the plaintiff must himself contribute? If these three questions can be answered in the negative, *i. e.*, if the action can be properly tried and decided wholly, irrespectively of the accounts between the parties, and if the damages sought will, when recovered, belong not to the firm (including the defendant in the action),

but exclusively to the plaintiff, and if he will not have to contribute to his own payment, then an action will lie, notwithstanding the parties to it are partners and the matter relates to some partnership transaction."

Mr. Justice Story says: "Wherever there is an express stipulation in the partnership articles which is violated by any partner, an action at law, either assumpsit or covenant, as the case may require, will ordinarily lie to recover damages for the breach thereof:" Story on Part., p. 343, § 218.

No other doctrine is known to the law, and the following cases show its application: Kilpatrick v. Penrose Ferry Bridge Co., 13 Wr., 118; Densmore Oil Co. v. Densmore, 64 Pa. St., 43; Scott's App., 88 Pa. St., 173.

In the case of Wicks v. Lippman, in the Supreme Court of Nevada, decided in October, 1878, 26 Pittsburg Leg. Jour. 176, Mr. Chief Justice HAWLEY, delivering the opinion of the court, says: "An action at law can be maintained by one partner against another, to recover a balance due, whenever the adjustment of the matter in controversy does not involve the settlement of any partnership account:" Parsons on Partnership, 284; Adams v. Funk, 53 Ills., 219; Russell v. Grimes, 46 Mo., 411.

That the measure of damages is the price which the defendants below and in error agreed to pay for the land, the plaintiff in error considers settled by the decisions of this court. In Tripp v. Bishop, 56 Pa., 424, on page 427, Mr. Justice STRONG, delivering the opinion of this court, says: "If the contracting parties have done all that the statute requires (*i. e.*, to comply with the statute of frauds), there is no reason why a purchaser should not be held to pay what he promised; or, in other words, why the price he undertook to pay is not the measure of damages for this breach of his contract." To the same effect are Dentler v. Brown, 1 Jones, 295; Garrard v. Lantz, 2 Jones, 186, 192-3; Addams v. Tutton, 3 Wright, 447; and Zimmerman v. Galbraith, 32 Pitts. Leg. Jour., 446.

*Mestrezat* (*Boyle* with him), for defendants in error.

It is well settled that one partner cannot sue his co-partners in an action at law, except in account render, for or about a partnership adventure, unless they have settled their accounts and struck a balance, or the partnership was limited to a single transaction. This has been decided time and again by the courts of this and other states, and we thought it was so firmly settled that the question was no longer raised: Ozeas v. Foulke, 1 Binn., 191; Andrews v. Allen, 9 S. & R., 241; McFadden v. Hunt, 5 W. & S., 468; Hall v. Logan, 34 Pa. St., 331; Meason v. Kaine, 63 Id., 335; Knerr v. Hoffman, 65 Id.,

[Crow v. Green.]

126; Leidy v. Messinger, 71 Id., 177; and Schnatterly v. Crow, 2 Lan. L. Rev., 127.

Mr. Justice GREEN delivered the opinion of the court April 26th, 1886.

Conceding that although some of the defendants except Boyd signed the agreement in suit, they are nevertheless to be treated as partners, because they were members of a proposed corporation which never organized, yet they were partners, if at all, jointly with the plaintiff. He was one of the largest subscribers to the stock of the company, and represented a much larger proportion of the capital of the concern than many of the defendants. The contract was for the purchase of property to be used for the purposes of the company or partnership. The business to be carried on upon the premises was a joint or partnership business. Upon the theory of a partnership the plaintiff was certainly liable to contribute in proportion to the extent of his interest to whatever funds were required for the uses of the partnership. If the firm owed debts, we know of no reason why he should not ratably contribute to their liquidation. On the other hand, if they realized profits, it is equally certain he would be entitled to his proportionate share. The theory upon which the action is based is that there was an actual partnership in legal effect, and without that theory of course there could be no recovery. But if there was a partnership, we find nothing in this record to show that the ordinary law of partnership is inapplicable to the relations of these parties to each other. The obligation to share losses, as well as gains, to contribute jointly with the others to the funds requisite to meet the liabilities of the partnership, is one of the most important and fundamental duties of the relation. This being so, we cannot understand, why, if a recovery is had in this action, the plaintiff should not be required to contribute to the payment of the money recovered. We are not informed of any fact which relieves him of that duty. No authority has been cited to show that in such a case that duty does not arise. The decisions cited by the learned counsel for the plaintiff do not touch this question. The citation from Lindley expressly excepts the case of a recovery of damages which must be paid out of a fund to which the plaintiff must contribute. It is entirely undisputed that there has never been any settlement of partnership accounts between the plaintiff and defendants. The latter, if liable at all, are only liable because they are members of a partnership known as "The Gallatin Mining and Furnace Company." It is that company only that is named in the contract upon which the suit is brought. None of the defendants are,

1 AMERMAN—41

[Crow *v.* Green.]

named in that contract, and none of them signed it or purported to sign it. But if the defendants are liable because they were subscribers to the stock of that company, the plaintiff is liable for the same reason. Suppose then a right of recovery be conceded in this case, for what amount shall the verdict be rendered? If for the whole amount of the contract price, most certainly the defendants could file a bill against the plaintiff to compel him to contribute his proportion. But why should these defendants who are a part only of the members of the partnership pay to the plaintiff who is also a member, the whole of a debt, for the payment of which he is jointly liable with them? Such a result would certainly be inequitable and contrary to every principle and precedent in the law of partnership. If, on the other hand, the verdict should be rendered only for such proportion of the whole amount of the purchase money as the defendants ought to pay, what is the amount of that proportion? That of course would depend upon the adjustment of partnership accounts. It is alleged that the plaintiff contributed nothing to the partnership. Mr. W. Franks testified: "The money had been collected off the stockholders. I don't know that Judge Crow ever paid any of his subscription. I don't think he ever paid the extra thousand. I would have known if he had. Judge was present at the meetings and was recognized as a stockholder."

It appeared from other testimony that a considerable amount of the subscriptions had been collected from the stockholders other than the plaintiff. How much then of the present liability should be paid by the defendants, and how much by the plaintiff? Who can tell, or how can that matter be determined? Of course it can only be determined by a bill in equity for the settlement of the partnership affairs and the adjustment of the accounts between the partners. But there is no pretence that anything of that kind has ever taken place between these parties. We find it impossible to conceive of any reason why that course should not be adopted in the present case. There never was a contract by which these particular defendants agreed to pay to this particular plaintiff any sum of money whatever for any purpose. Their liability as individuals to make any such payment is a derivative liability resulting from a joint relation with the plaintiff, which imposes the same liability upon him. It is not necessary to enlarge upon this subject. The case comes within the perfectly familiar rule that one partner cannot sue another partner for a partnership transaction except by bill in equity or action of account render. Some of the Pennsylvania authorities are the following: Ozeas *v.* Foulke, 1 Binn., 191; Hall *v.* Logan, 10 Cas., 331; McFadden *v.* Hunt, 5 W. &. S., 468;

Leidy *v.* Messinger, 21 P. F. S., 177; Schnatterly *v.* Crow, decided in November, 1876, by this court, and reported in 2 Lan. Law Rev., 127.

Judgment affirmed.